IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CONCEPCION TALAMANTES,**

vs.                                                                                                                                        Civil No. 02-1128 RLP

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Plaintiff's Motion to Reverse Administrative Agency Decision and Remand for Rehearing. (Docket No. 12). Having reviewed the record in this case and for the reasons set forth in this Memorandum Opinion and Order, the court denies Plaintiff's Motion and affirms the Commissioner's decision.

**I.     Procedural Background**

Plaintiff filed applications for Social Security Disability benefits and Supplemental Security Income in January 1997, alleging disability due to back, shoulder, and leg injuries and diabetes which prevented him from performing heavy lifting. (Tr. 109-111, 211-214, 122). His applications were initially denied on March 11, 1997, and again on June 26, 1997. (Tr. 77-78, 215, 220).

Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ") on August 4, 1997. A hearing on Plaintiff's claim was held on June 8, 1999. By Order of June 25, 1999, the ALJ found that Plaintiff was not disabled and therefore ineligible for benefits. Plaintiff requested review of this decision which was denied by the Appeals Council of the Social Security Administration.

The ALJ's decision stands as the final decision of the Commissioner.

## II.   Factual Background

Plaintiff was born on January 12, 1955. (Tr. 109). He completed 6th grade in Mexico, has limited English speaking ability (Tr. 139, 42, 57, 62-63) and is considered unable to communicate in English. (Tr. 25). He was employed as a roofer for twenty years. (Tr. 170-171, 43). Plaintiff was injured in January 1991. The physical impairments stemming from these injuries are not disputed, and are set out in the February 18, 2998 report of consultative examination performed by J. Michael Simson, M.D. Dr. Simson diagnosed mild lumbar pain of unclear etiology with no evidence of radiculopathy, and left shoulder injury which limited his ability to elevate the left arm, but which cause no other limitations in terms of range of motion.[1]. These conditions produced the following limitations:

--   Lifting/Carrying:  Mild impairment due to left shoulder problems.
      Left arm:  unable to lift heavier weights of any type above the chest or head
      Right arm: Carrying limited to up to 20 pounds with the right arm for up to one-third of an 8 hour day.

--   No limitation in ability to stand or walk.

--   Sitting:  Must rise and walk around probably every hour.

--   Climbing, stooping, and crouching limited to an occasional basis; balancing, kneeling and crawling can be performed on a frequent basis.

--   Range of motion:
      Left arm:  Unable to reach above 90E with left arm, ability to reach at less than 90E unimpaired.
      Right arm:  No impairment.

---

[1] Dr. Simson also addressed post-traumatic cyst formation on Plaintiff's scalp stemming from his 1991 accident, and his history of diabetes. (Tr. 206-208). These cysts have not caused exertional impairments. The ALJ found that Plaintiff's diabetes was well controlled when he complied with his medication regimen. These finding have not been challenged.

2

>   --      No impairment in ability to handle, feel, push, pull, see, speak or hear.
>
>   --      Should not climb excessively. No restriction in ability to be around moving machinery, temperature extremes, chemical dust, noise, fumes, humidity or vibration.

(Tr. 206-208).

The limitations assigned by Dr. Simson are consistent with an evaluation made by Plaintiff's treating orthopedic surgeon. (Tr. 182).

### III.  Testimony of the Vocational Expert

The ALJ presented a hypothetical question to the vocational expert premised on Plaintiff's background. The expert was asked to assume an individual with Plaintiff's date of birth, a limited education, whose past work was as a roofer and foreman, jobs requiring medium to very heavy exertional ability, and who spoke mostly Spanish. (Tr. 61-63). In addition, the vocational expert was asked to assume the limitations set out in Dr. Simpson's report. (Tr. 63). The vocational expert testified that such an individual would be unable to do his past work, but did have the ability to perform the jobs of:

>   Assembler, Small Products     DOT 706-684-022
>   unskilled, light; 334,000 jobs in the national economy; 650 jobs in New Mexico
>
>   Laundry spotter, folder       DOT 361-587-010
>   unskilled; light; 40,500 jobs in the national economy; 1,000 jobs in New Mexico
>
>   Cannery Worker                DOT 529-686-014
>   unskilled light, 73,000 jobs in the national economy; 500 jobs in New Mexico

(Tr. 64).

The vocational expert stated that the number of jobs cited took into consideration Plaintiff's inability to communicate in English. (Tr. 72-73). She testified further that if a sit/stand option were included

in the hypothetical, the job of laundry spotter, folder would not be affected, but that the jobs of assembler, small products and cannery worker would be further reduced by half. (Tr. 67-68).

## IV. The ALJ's decision.

The ALJ found that Plaintiff suffered from severe impairments consisting of diabetes melitus and the residual effects of injuries to his head, back, left shoulder and leg; that he did not meet or equal the requirements for a listed impairment, citing to Listing sections 1.00 and 9.00; that Plaintiff's testimony and other evidence did not credibly establish symptoms or functional limitations to the extent alleged; that Plaintiff retained the residual functional capacity for a limited range of light work; that Plaintiff could not return to he prior employment but did retain the residual functional capacity for the jobs of assembler[2], laundry spotter[3] and cannery worker[4].

## V. Scope of Review

Judicial review by this court is limited to determining (1) whether the Commissioner applied the proper legal standards and (2) whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F. 2d 1495, 1497-1498 (10th Cir. 1992). If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect. 42 U.S.C. §405(g). Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971). Further, evidence must be more than a scintilla, *Id*., at 403, but may be less than a preponderance. *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

---

[2]Jobs available nationally- 167,000; jobs available regionally - 325. (Tr. 26, 64, 67-68, 70-72).

[3]Jobs available nationally - 20,000; jobs available regionally - 500. Id.

[4]Jobs available nationally - 35,000; jobs available regionally - 250. Id.

**VI.    Issue on Appeal**

Citing *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999), Plaintiff contends that the ALJ committed a legal error at Step Five of the sequential evaluation process by accepting without clarification the testimony of a vocational expert which was in conflict with the Dictionary of Vocational Titles.  Specifically, Plaintiff contends that as described in the DOT, the jobs identified by the vocational expert require a reasoning level of 2 (the ability to follow detailed but uninvolved written or oral instructions) and either frequent or constant reaching, and these requirements are inconsistent limited ability to communicate in English and inability to reach above 90 degrees with his left arm. (*Plaintiff's Memorandum in Support of Motion to Reverse and Remand for a Hearing*, Docket No. 13, at 4-5).

**VII.    Burden of Proof**

This case was decided at step five of the sequential evaluation process.  Accordingly, the ALJ bears the burden to show that there are jobs in the regional or national economies that a claimant can perform with the limitations the ALJ has found the claimant to have. *See, e.g., Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (*citing, inter alia* 42 U.S.C. §423(d)(2)(A)).

**VIII.    Discussion**

In *Haddock*, the ALJ provided a hypothetical question to a vocational expert who "summarily" identified four jobs the claimant could perform.  The expert did not discuss the DOT, which indicated that the jobs cited required greater exertional capacity than the ALJ found the claimant to have.   The Tenth Circuit held:

> (B)efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the

5

Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.

*Haddock v. Apfel,* 196 F.3d at 1086-1087.

Applying *Haddock* to the present case, the questions presented are whether a discrepancy exists between the vocational expert's testimony, and if so, whether a reasonable explanation for any discrepancy was offered.

### A. Reasoning Level

The DOT assigns a reasoning level of 2 to the three occupations identified by the vocational expert. This level requires the ability to apply common sense understanding to carry out detailed but uninvolved *written or oral* instructions. Plaintiff's prior work as a roofer, which he successfully performed for 20 years (Tr. 42-43), required the higher reasoning level of 3, the ability to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. (Dictionary of Occupational Titles, ¶866.381-010, (4th Ed. 1991). No evidence was presented suggesting that Plaintiff suffered from any diminution or limitation in his reasoning ability, and no such limitation was found to exist by the ALJ. The ALJ presented Plaintiff's language limitations as part of the hypothetical question posed to the vocational expert. The inability to read and write English is a minimal limitation in unskilled work, such as that Plaintiff was found able to perform. See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App.2, § 202.00(g). The vocational expert specifically considered Plaintiff's inability to communicate in English in assessing the number of jobs that remained within his residual functional capacity.

### B. Reaching above 90 degrees with the left arm

Plaintiff argues that the DOT requirement of frequent or constant reaching is commensurate

with frequent or constant reaching over 90 degrees. This contention is without merit. There is simply nothing in the DOT for the job enumerated by the vocational expert that includes this specific physical demand. Further, Plaintiff is right handed (Tr. 42) and has no reaching impairment related to his dominate right arm.

## Conclusion

I find that the Commissioner met her step-five burden of proving that there are sufficient jobs in the national economy for a hypothetical person with the Plaintiff's impairments.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand [Docket No. 12] is denied, and the decision of the Commissioner denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income is affirmed.

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**